IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

MUKESH PATEL,

    Plaintiff,

v.

                                                  Civil Action No. 4:13cv59

HARSHAD D. BAROT,
PRAKASH D. BAROT,
CAAP HOSPITALITY, LLC,
SHRINIDHI CORPORATION, INC.
    and
DBSH, LLC,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on Defendants Harshad D. Barot; Prakash D. Barot; CAAP Hospitality, LLC; DBSH, LLC; and Shrinidhi Corporation, Inc.'s ("Defendants") Motion for Settlement and Dismissal, Doc. 39, and Amended Motion for Settlement Approval, Doc. 42, as well as Plaintiff Mukesh Patel's ("Plaintiff" or "Patel") counsel's Motion to Withdraw as Attorney, Doc. 45. For the reasons stated herein, the Court **GRANTS** the above Motions.

I.     **Factual and Procedural Background**

On May 2, 2013, Patel filed a Complaint against the Defendants, alleging violations of the Fair Labor Standards Act ("FLSA"), violations of Virginia's minimum wage law, assault, and battery. Doc. 1. A settlement conference was held before United States Magistrate Judge Lawrence Leonard on January 14, 2014. Settlement discussions continued, and a Joint Notice of Settlement was filed on January 27, 2014. Doc. 38. A Motion for Settlement and Dismissal was

1

filed by the Defendants on February 5, 2014, Doc. 39, followed by a Motion for Settlement Approval filed on February 7, 2014. Doc. 42. Plaintiff then filed a Memorandum in Opposition to the Motions on February 19, 2014. Doc. 44. Plaintiff's counsel, James R. Theuer ("Theuer"), then filed a Motion to Withdraw that same day. Doc. 45.

Plaintiff's Opposition did not state why he opposed the settlement. Doc. 44. In their supporting Memorandum, Defendants submitted an e-mail dated January 27, 2014 from Plaintiff's counsel stating, in whole:

> This confirms that Plaintiff accepts the offer of settlement, to wit:
> Defendants will pay $100,000 in six equal installments beginning 14 days from court approval and on 30-day intervals thereafter. Plaintiff will designate the allocation.
> In addition, Defendants will not dispute such that Plaintiff will get the $4855.85 on deposit with DOL[1] from DBSH.
> The settlement amount will be secured through a promissory note and recorded DOT by CAAP Hospitality, LLC, against the Hampton Bay Plaza hotel property.
> Court retains jurisdiction to enforce the settlement.

Doc. 39-1. The e-mail is signed by Plaintiff's counsel. Id. The Settlement Agreement ("Agreement") contains these terms. Doc. 39-2. However, it contains numerous additional terms not memorialized in this e-mail.[2] Many are general releases that would be expected in a settlement agreement, claiming both Plaintiff and Defendants waive all causes of action against each other. The Agreement also contains language whereby the Defendants do not admit liability, but again this is not uncommon to a settlement agreement. The Agreement also contains a choice of law provision specifying Virginia law; a forum selection clause; a clause regarding the award of attorney's fees in an action to enforce the Agreement; a warning regarding potential tax consequences of the Agreement; and other disclaimers regarding bankruptcy, misrepresentations, and violations. Furthermore, the Agreement contains language stating that it "shall be effective

---

1 "DOL" is short for the United States Department of Labor.
2 All these additional terms may be found between pages 1–8 of the Agreement, Doc. 39-2.

upon exchange by the parties of fully executed copies of this Agreement." Doc. 39-2 at 8.

The Court held a hearing on the Motion to Withdraw on March 5, 2014. Despite being orally instructed to appear, Plaintiff failed to appear. Plaintiff's counsel represented to the Court that he was concerned if forced to continue representing the Plaintiff, he could run afoul of his responsibilities under the Virginia Rules of Professional Conduct. The Court, while recognizing his concern, denied the Motion to Withdraw without prejudice, and ordered a hearing on March 19, 2014 on the pending Motions regarding the Settlement Agreement. Doc. 50. The Court gave leave to the parties to file supplemental briefing on the enforceability of the Settlement Agreement, but neither party filed a brief.

A hearing was then held on March 19, 2014 concerning the enforceability and fairness of the proposed Agreement. The Court first called Patel as a witness. Patel testified that he never fully agreed to the settlement, but that he forgot to tell Theuer to consider the injury portion of his case because he was busy when Theuer called him to discuss the terms of the Agreement. Patel testified that he told Theuer the settlement was acceptable for the wage portion of the case. Patel testified he did not realize the settlement was for the entire case until he received the written agreement.

At that point, the Court informed Patel that his testimony was in conflict with his attorney's e-mail and thereby forced the Court to call Theuer as a witness. In view of the conflict of interest between Plaintiff's counsel and Plaintiff, the Court granted Theuer's request to withdraw. Patel stated that no one had informed him that Theuer could no longer act as his attorney. The Court, having granted Theuer's Motion to Withdraw, called him as a witness, and advised the parties that Patel's conduct and testimony compelled the Court to rule that Patel had waived his attorney-client privilege.

Theuer testified that he told his client to obtain substitute counsel for the hearing, and spoke with him three times regarding this issue, but that Patel did not commit to obtaining new counsel if he was forced to withdraw. Theuer testified that he sent an e-mail to opposing counsel on January 27, 2014 containing the terms of the proposed Settlement Agreement because Patel had authorized him to do so. Theuer testified that he explained to Patel how the $100,000 settlement (plus the wages set aside with the DOL) would be broken down, and that Patel told him he wanted $66,000 to settle the entire case. Theuer also testified that he sent a copy of the January 27 e-mail to Patel, but that it was not until February 4 that Patel informed him he would not sign the Agreement.

Prior to Patel's phone call to Theuer concerning the settlement, Theuer testified that he received an e-mail from Patel saying he would accept $66,000, but not the DOL wages.[3] The e-mail did not distinguish between the wage claims and the injuries. Confused by this, Theuer called Patel to clarify this misunderstanding. Theuer testified that Patel said he understood, and that he had authorized Theuer to accept the settlement. Theuer went on to explain to the Court that he never understood Patel to separate the wage and injury portion of his case. Theuer also provided the Court a copy of his retainer agreement with Patel, which the Court admitted as an exhibit.[4]

The Court next questioned Theuer on Patel's injuries alleged in the assault and battery claims. Theuer testified that the injuries resulted from Patel being pushed. Patel saw a physician twice, though his care was not extensive. Theuer testified that Patel did not have health

---
[3] A copy of this e-mail was admitted by the Court as an Exhibit.
[4] The retainer agreement does not expressly provide Theuer authority to settle the case.

insurance, and did not seek further medical care.[5]

Theuer also testified regarding the terms and structure of the Agreement. Theuer stated that he structured it in a way to give Patel the most favorable tax treatment as would be allowed by the Internal Revenue Service ("IRS"). Thus, a portion of the recovery was allocated for his injuries; such payments would not be subject to IRS withholding, as the payments for his wages would be. Therefore, the settlement was structured so that $22,000 was allocated for the unpaid wages under the FLSA, $22,000 for liquidated damages under the FLSA, and $22,000 for the tort claims.[6]

After Theuer's testimony, the Court again called Patel to the stand. Patel testified that the phone conversation with Theuer in which they discussed the Agreement lasted three or four minutes. Patel testified that he asked Theuer to hold on accepting the settlement. He testified that he did not believe he had achieved a final settlement until he saw the e-mail.

The Court then heard argument on the fairness of the Agreement. Defense counsel argued that according to their calculations, assuming liability at all, they owed about $14,000 in unpaid wages to Patel. Defense counsel informed the Court that the value of the DOL wages was smaller because it covered only a discrete portion of time. Theuer informed the Court that according to his calculations, a best case scenario for Patel would be a recovery of $74,000 in unpaid overtime compensation. However, Theuer listed a number of issues that could prevent Patel from recovering that sum: the necessity of showing that the Defendants were a common enterprise to achieve any recovery at all; proving the amount of hours Patel worked; and the statute of limitations.

---

5 The Court asked the parties to submit documentation regarding the extent of Patel's injuries. An affidavit from Defendant Barot was received on March 26, 2014 containing the medical documents. Doc. 54. The Court finds that the documents are consistent with Theuer's testimony regarding the treatment of Patel's injuries.
6 The rest was to cover Theuer's fees and costs.

At the conclusion of the hearing, the Court informed Patel that it would keep the Defendants' Motions under advisement for ten (10) days. The Court informed Patel that if he wished to hire an attorney to represent him in the matter, that such attorney must enter a notice of appearance with the Court within ten (10) days of the date of the hearing. Alternatively, the Court informed Patel that in lieu of hiring an attorney, he could file an affidavit with the Court explaining any additional facts he felt the Court should consider in ruling on the Motion. Patel stated that he understood the Court's direction. No attorney has filed an appearance for Patel, and Patel has not filed any affidavit or other evidentiary information.

## II.     Legal Standards

District courts have the inherent authority to enforce settlement agreements. Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002). However, before enforcing a settlement agreement, the Court must conclude an agreement has been reached. Id. Thus, the Court has a two-step inquiry: (1) did the parties reach a complete agreement, and (2) can the Court determine its terms and conditions? Id. at 540–41. When presented with a factual dispute regarding whether an agreement has been reached, or if the attorney has the authority to enter into the agreement, the court "'must conduct a plenary evidentiary hearing in order to resolve that dispute,' and "make findings on the issues in dispute." Id. at 541 (quoting Millner v. Norfolk & W. Ry. Co., 643 F.2d 1005, 1009 (4th Cir. 1981)) (citing Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983)). Settlement agreements are matters of contract law, and contract law principles apply. Bradley v. Am. Household Inc., 378 F.3d 373, 380 (4th Cir. 2004); see also Intersections, Inc. v. Loomis, No. 1:09cv597, 2010 WL 4623877, at *3 (E.D. Va. Nov. 3, 2010) (applying Virginia law in finding a settlement agreement unenforceable). Courts will only enforce "settlement terms on which the parties have reached agreement." Bradley, 378 F.3d at 380. "Once a competent party

makes a settlement and acts affirmatively to enter into such settlement, her second thoughts at a later time upon the wisdom of the settlement do not constitute good cause for setting it aside." Snyder-Falkinham v. Stockburger, 457 S.E.2d 36, 41 (Va. 1995); see also Hensley, 277 F.3d at 540.

Furthermore, because this action arises from the FLSA, federal law requires court approval for fairness before any settlement can be executed, and the public has a genuine interest in determining whether the court is properly fulfilling its duties when it approves an FLSA settlement agreement. Boone v. City of Suffolk, Va., 79 F. Supp. 2d 603, 609 (E.D. Va. 1999). This Court has followed the guidelines for approval of an FLSA settlement set forth by the Eleventh Circuit in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982). Boone, 79 F. Supp. 2d at 605 n.2. "[I]n the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." Lynn's Food Stores, 679 F.2d at 1353. Lynn's Food instructs the Court to "determine[ ] that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Id. at 1355.

### III. Analysis

#### A. Enforcing the Settlement Agreement

##### 1. Factual findings

Because Patel argues that he never accepted the Agreement and never authorized Theuer to settle the case, the Court must make factual findings on this issue. The Court makes the following factual findings:

7

The Court **FINDS** that Patel authorized Theuer to settle the case according to the terms of the e-mail, Doc. 39-1. The Court further **FINDS** that Theuer drafted the Agreement in accordance with his client's authorization to settle the case, but that some of the terms of the Agreement, such as choice of law, mutual releases, and attorney's fees incurred in enforcing the settlement, while consistent with Patel's authorization to settle, were not encompassed in Patel's specific authorization to Theuer. The Court **FINDS** that Patel authorized Theuer to settle the entire case, including his FLSA claims for unpaid wages and statutory damages as well as his personal injury claims. Furthermore, the Court **FINDS** that Patel understood the terms of the Agreement set forth in Theuer's e-mail of January 27, 2014. The Court **FINDS** that Patel's medical injuries for assault and battery were not severe. The Court **FINDS** that through his conduct and testimony, much of which the Court **FINDS** is <u>not</u> credible, Patel waived his attorney-client privilege and understood that Theuer could not continue to represent him at the March 19, 2014 hearing. Finally, the Court **FINDS** that Patel understood the instructions of the Court on March 19, and has chosen not to hire an attorney or file an affidavit or other evidence.

## 2. Conclusions of law

Attorneys have implied authority to conduct litigation and negotiate its resolution. <u>Auvil v. Grafton Homes, Inc.</u>, 92 F.3d 226, 229–30 (4th Cir. 1996). However, substantive decisions, such as the authority to settle, "are not by implication ones that the attorney is authorized to make." <u>Id.</u> at 230; <u>see also</u> <u>Snyder-Falkinham</u>, 457 S.E.2d at 39 ("An attorney at law, merely by virtue of being retained by the client, has no authority to compromise the client's claim without the latter's consent."). If an agent (the attorney) does not have the authority to act on behalf of the principal (the client), the agent's statements to a third-party "cannot, without more, entitle a third-party to rely on his agency." <u>Auvil</u>, 92 F.3d at 230. Under Virginia law, an attorney cannot move to

dismiss a case with prejudice without the consent of the client. Snyder-Falkinham, 457 S.E.2d at 39.

Binding oral and written contracts exist when there is an objective manifestation to be bound, even if a subsequent formal agreement is contemplated. Sengal v. Fakouri Elec. Eng'g, Inc., No. 1:10cv538, 2011 WL 5873376, at *3 (E.D. Va. Nov. 22, 2011). However, "without a meeting of the minds as to all material terms, there can be no enforceable settlement agreement as a matter of contract law." Intersections, Inc., 2010 WL 4623877 at *2. "[A] settlement that includes a term requiring that it be reduced to a signed writing is not enforceable unless and until that contingency is fulfilled." Id. at *3.

In Snyder-Falkinham, the Supreme Court of Virginia found that a retainer agreement authorizing the attorney "to effect a settlement or compromise," combined with the act of the plaintiff giving oral instructions to empower her attorneys to speak for her during negotiations, gave the necessary consent to bind the plaintiff to the settlement agreement. Id. at 41–42. Furthermore, in Singer Sewing Machine Co. v. Ferrell, 132 S.E. 312, 314–15 (Va. 1926), the Supreme Court of Virginia held that the act of the attorney negotiating in the presence of the plaintiff and defendant, and the plaintiff assenting to a document, was sufficient to establish apparent authority to settle a case.

Here, while the retainer agreement does not explicitly authorize Theuer to settle the case, he received direct authorization from Patel. This is sufficient evidence under Virginia law for Theuer to have set forth the terms of the settlement as expressed in the e-mail.

Additionally, neither the inclusion of the additional terms in the Agreement, nor the requirement that the Agreement be fully executed before taking effect, defeat the enforceability of the settlement as expressed in the January 27 e-mail. In Snyder-Falkinham, 457 S.E.2d at 41,

Plaintiff's oral agreement to a proposed settlement agreement, despite the fact that a later writing was contemplated, was sufficient to bind her to that agreement. But see Golding v. Floyd, 539 S.E.2d 735, 737 (Va. 2001) (finding that a settlement memorandum prepared during a mediation session containing the language "subject to execution of a formal agreement" did not create a binding agreement because the execution of a formal agreement was an express condition of the initial agreement). Pursuant to Snyder-Falkinham, the e-mail does not contain any language stating that it is subject to execution of a formal agreement; accordingly, while the formal Settlement Agreement as drafted by Plaintiff's counsel is not enforceable, the settlement as outlined in the e-mail is enforceable. See also Bamgbose v. Delta-T Group, Inc., Civil Action No. 09-667, 2011 WL 6150599, at *4 (E.D. Pa. Dec. 12, 2011) (finding that settlement terms attached to an e-mail that were accepted by counsel sufficient to create a binding settlement). Thus, the Court **FINDS** that an enforceable settlement was reached.[7]

### B. Fairness of the Settlement

Even though there is an enforceable settlement, the Court must still determine if the proposed settlement is proper under the FLSA.[8]

When considering a motion to approve an FLSA settlement agreement, courts weigh a

---

7 While Virginia courts do not recognize the "blue pencil" doctrine in making an unenforceable agreement enforceable, that doctrine is not implicated by this case. See Pitchford v. Oakwood Mobile Homes, Inc., 124 F. Supp. 2d 958, 965–66 (W.D. Va. 2000) (discussing cases). Here, the Court is not striking any terms from the Agreement; it is holding that the January 27, 2014 e-mail contains the terms of the settlement, whereas the Agreement drafted by Theuer was prepared without the specific authority of the Plaintiff, and thus cannot be enforced by this Court in accordance with Virginia law.

8 The Eleventh Circuit has held that when one party objects to a FLSA settlement, then a district court cannot enter an order approving it. Nall v. Mal-Motels, Inc., 723 F.3d 1304, 1308 (11th Cir. 2013). The Eleventh Circuit noted that it did not have any decisions defining the term "stipulated judgment" in Lynn's Food. Id. The Court reasoned that "a judgment to which one side objects is not a stipulated one." Id. This Court did not find any other opinions subsequent to Nall that applies the holding in that case to a situation analogous to the one before the Court; however, a sister court in the Fourth Circuit has enforced an oral settlement agreement in which the defendant attempted to back out of prior to the completion of a written agreement. Lopez v. XTEL Const. Group, LLC, 796 F. Supp. 2d 693, 699–700 (D. Md. 2011). The instant case is more like Lopez than Nall because Patel is attempting to back out of a settlement agreement that he authorized his attorney to enter into.

number of factors, including:

> (1) the extent of discovery that has taken place;
> (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation;
> (3) the absence of fraud or collusion in the settlement;
> (4) the experience of counsel who have represented the plaintiffs;
> (5) the probability of plaintiffs' success on the merits[;] and
> [(6)] the amount of the settlement in relation to the potential recovery.

In re Dollar General Stores FLSA Litigation, No. 5:09-MD-1500, 2011 WL 3841652, at *2 (E.D.N.C. Aug. 23, 2011); see also Lomascolo v. Parsons Brinckerhoff, Inc., No. 1:08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sep. 28, 2009).

With regard to factors (1) and (2), the parties have gone through discovery, and a draft of a final pretrial order was prepared. Doc. 40 at 2. A settlement conference was held with Judge Leonard on January 14, 2014. Id. The parties were represented by counsel.

Regarding factor (3), the Court notes that the Plaintiff contests the settlement as set forth in the January 27th e-mail. However, the Court finds that Plaintiff actually authorized the settlement, and there is no evidence counsel colluded in negotiating a settlement against Plaintiff's wishes.

With regard to factor (4), both parties have been represented by counsel. While the Court granted the Motion to Withdraw during the settlement hearing, the Plaintiff had the experience of counsel negotiating this settlement, and defense counsel and Theuer are experienced in litigating FLSA claims.

With regard to factor (5), the evidence presented to the Court indicated that Plaintiff had significant hurdles to overcome to affect any recovery under the FLSA. Thus, this factor weighs heavily in favor of finding the settlement fair.

With regard to factor (6), the Plaintiff will receive a total of $104,855.85 from the

Defendants.[9] The $100,000 is payable in six equal monthly installments, and the other $4,855.85, which has been submitted by Defendant DBSH to the DOL, will be released to Patel for back wages. The $100,000 breaks down as follows: $5,522.53 in costs to Theuer, two $11,000 installments to Patel for physical injuries, $4,855.85 and two installments of $8,572.07 for liquidated damages, two installments of $8,572.07 subject to applicable withholding for back wages, and two installments of $16,666.66 to Theuer for attorney's fees.[10]

Regarding the attorney's fees, Theuer has spent more than 163 hours on this case. Doc. 40 at 5. His total fee of $33,333.32, plus costs of $5,523.53, totals $38,856.85, or approximately 37% of the recovery. The hourly rate averages out to approximately $204.50. While the Court was not provided a complete breakdown of the fees, this award is consistent with other cases in the district. See Walker v. Dovetails, Inc., No. 3:10cv526, 2010 WL 5878336, at *3 (E.D. Va. Nov. 30, 2010) (finding hourly rates of $250 and $350 reasonable).

This would leave Plaintiff a gross payment of $70,855.85, of which $48,855.85 is allocated for the FLSA claim. The parties represented to the Court that the potential unpaid overtime ranged from $14,000 to $78,000; however, there could be potentially no recovery because the main employer, Shrinidhi Corp., could conceivably not be covered by the FLSA. Therefore, the award given to Patel was fair.

Thus, the settlement is fair and the Court **GRANTS** Defendant's Motion for Approval of the Settlement Agreement.

### IV. Conclusion

For the above-stated reasons, the Court **GRANTS** Defendants' Motions, Docs. 39 & 42, and **GRANTS** Plaintiff's counsel's Motion to Withdraw, Doc. 45. The Court **FINDS** Patel

---

9 This is all taken from the pages 4–6 of the Agreement, Doc. 39-2.
10 After adding up the amounts to be paid in each installment, the Court came to a sum of $99,999.98.

authorized his attorney to settle all claims for lost wages and statutory damages under the FLSA, as well as his tort claims. The Court **FINDS** that the use of the term allocation in the January 27, 2014 e-mail is consistent with Patel's authorization to settle the case. The Court **FINDS** that Patel understood there would be an allocation of damages among his several claims as evidenced by Theuer's e-mail of January 27, 2014. In view of the hurdles that Patel faced in effecting any FLSA recovery, the Court **FINDS** the amount allocated to the FLSA claims is fair and reasonable. The Court further **FINDS** that the amount allocated to cover the tort claims is also fair and reasonable.

Therefore, the Court **ORDERS** that all claims for damages included in the Complaint and specifically those claims for damages under the FLSA and for personal injury are **DISMISSED WITH PREJUDICE**. With the exception of those costs specified as reimbursable to Plaintiff's counsel, all other costs shall be borne by the party incurring them.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record, as well as to pro se Plaintiff Patel.

It is so **ORDERED**

                                                  /s/
                                  Henry Coke Morgan, Jr.
                                  Senior United States District Judge
                                  *HENRY COKE MORGAN, JR.*
                                  SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

Date: April 23rd, 2014